UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YELLOWSTONE TO UINTAS CONNECTION, and ALLIANCE FOR THE WILD ROCKIES,<br><br>  Plaintiffs,<br><br>  v.<br><br>MEL BOLLING, Forest Supervisor Caribou-Targhee National Forest; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,<br><br>  Defendants, and<br><br>LOWER VALLEY ENERGY, INC.,<br><br>  Intervenor. | Case No. 4:25-cv-00211-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

Before the Court is Plaintiffs Yellowstone to Unitas Connection and Alliance for the Wild Rockies' (collectively "Alliance") Motion for Injunction Pending Appeal. Dkt. 34. Defendants Bolling and the United States Forest Service (collectively, the "Forest Service") and Intervenor Lower Valley Energy ("LVE") oppose the Motion. Dkts. 37, 38.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On December 4, 2024, the Forest Service issued a Record of Decision (the "2024 ROD") authorizing the Crow Creek Pipeline Project ("Project") in the Caribou-Targhee National Forest. The Project allows LVE to bury a pipeline that will transport natural gas from Montpelier, Idaho, to Afton, Wyoming.

On April 14, 2025, Alliance filed suit seeking judicial review of the 2024 ROD, the associated environmental surveys and statements, and, ultimately, the Project itself under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq ("APA"). Dkt. 1. Alliance alleges the Forest Service's decision was arbitrary and capricious and violates the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4331 et seq., the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 et seq., and the Mineral Leasing Act ("MLA"), 30 U.S.C. §§ 185 et seq. *See generally id.* at 24–33.

On June 16, 2025, Alliance filed a Motion for Preliminary Injunction and/or Temporary Restraining Order seeking to halt work on forest land until the underlying merits of its APA challenge can be resolved. Dkt. 14. After briefing and oral argument, the Court issued a decision on July 14, 2025, denying Alliance's Motion. Dkt. 29.

In summary, the Court found Alliance had not met its burden under the *Winter* factors[1] to obtain an injunction. The Court explained that, under the APA, it will ultimately review the Forest Service's decision to determine whether any of its actions were arbitrary or capricious. But at the present time, the Court cannot say with any certainty that Alliance

---

[1] *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

is likely to succeed on those claims. Additionally, the Court found Alliance only alleges speculative harms. For those reasons, the Court denied the motion and allowed construction of the pipeline to continue uninhibited.

That same day (July 14, 2025), Alliance appealed the Court's decision to the Ninth Circuit. Dkt. 30. The next day Alliance filed a Motion for Injunction Pending Appeal. Dkt. 34.[2] Considering the ongoing construction of the pipeline, the Court expedited briefing on the matter. Dkt. 35.[3] The Forest Service and LVE timely filed briefs opposing Alliance's Motion. Dkts. 37, 38. Alliance replied (Dkt. 39), and the Motion is ripe for consideration.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(d), a District Court is vested with discretion to grant an injunction pending appeal to preserve the status quo. *See e.g. Mecinas v. Hobbs*, 2020 WL 13865449, at *2 (D. Ariz. July 10, 2020). The Rule states:

> While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an

---

[2] Except for a few paragraphs, Alliance's brief in support of its Motion for Injunction Pending Appeal is the same as it's prior brief in support of its Motion for Temporary Restraining Order. *Compare* Dkt. 14-1 with Dkt. 34-1. Because the arguments are quite similar, the repetitiveness does not concern the Court as much as it concerns the Forest Service. *See* Dkt. 37, at 2 (noting Alliance "merely cop[ied] [its] prior brief" and "made no effort to meet [its] burden"). Alliance's reply does a little better job of focusing on specifically why an injunction at this stage is warranted as opposed to simply copying its prior brief.

[3] The Court asked the parties to file short briefs addressing the propriety of "a stay pending appeal." Dkt. 35. As the Forest Service correctly recognizes, the Court meant for the parties to address the propriety of an "*injunction* pending appeal"—which is what Alliance seeks. The standards for a "stay" or "injunction" pending appeal are similar, but they function somewhat differently in that a stay typically suspends judicial action while an injunction typically seeks judicial intervention. *See* Fed. R. Civ. P. 62(d); *Nken v. Holder*, 556 U.S. 418, 428–29 (2009). But here, whether the Court "stays" its prior order denying Alliance's Motion for Temporary Restraining Order or grants a new "injunction," the result is the same—work on the pipeline stops. Technically speaking, however, Alliance sought an *injunction* pending appeal and the Court will analyze the request under that framework.

> injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(d).

"Although a notice of appeal will ordinarily divest a district court of jurisdiction over the matters being appealed, the district court 'retains jurisdiction during the pendency of an appeal to act to preserve the status quo.'" *Kollenburn v. Cnty. of Clackamas*, 2021 WL 1842148, at *2 (D. Or. Mar. 16, 2021) (quoting *Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001)).

Additionally, the Federal Rules of Appellate Procedure provide that a party may request a stay or seek an injunction during the pendency of an appeal of a district court order. Fed. R. App. P. 8. Specifically, Rule 8(a)(1) requires that the party seeking relief move first in the district court for an injunction before seeking relief from the court of appeals. Fed. R. App. P. 8(a)(1).

"It is well established that the standard for issuance of an injunction pending appeal is the same as the standard for issuance of a preliminary injunction." *All. for the Wild Rockies v. Brazell*, 2014 WL 3732649, at *1 (D. Idaho July 25, 2014); *see also Reclaim Idaho v. Little*, 2020 WL 8254279, at *1 (D. Idaho June 29, 2020) ("A stay pending appeal overlaps with the function of a preliminary injunction—each prevents some action before the legality of that action has been conclusively determined." (cleaned up)).

A party seeking an injunction of the district court's order pending appeal must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their

favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (cleaned up).

The party seeking stay of an injunction pending appeal bears the burden of showing entitlement to a stay. The decision to grant a stay pending appeal is discretionary and should be evaluated based on "the circumstances of the particular case." *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (cleaned up).

## IV. ANALYSIS

As the Court has noted before, injunctions pending appeal are a fickle friend. This type of relief requires the Court to essentially "question the validity of its own holding." *Courthouse News Serv. v. Omundson*, 2024 WL 5136925, at *4 (D. Idaho Dec. 17, 2024). At the very least, it puts the Court in the awkward position of looking for a likelihood of success on the merits of the Plaintiff's claims *after* having already found no likelihood of success exists. These conundrums aside, the Court must undertake the appropriate review.

First, as the Court outlined in its decision, Alliance has not shown a likelihood of success on the merits of its claims. *See generally* Dkt. 29, at 8–14. Specifically, the Court found Alliances arguments as to sage grouse,[4] utility corridors, and the Mineral Leasing

---

[4] Alliance specifically highlights the Court's analysis relating to sage grouse habitat and alleges the Forest Service "successfully directed the Court to focus" on a smaller area of examination than was required. Dkt. 39, at 3. The Court did focus on the pipeline corridor area. But even if it expanded its analysis, such does not mean Alliance has any greater likelihood of success on its claim. Alliance does not contest the Forest Service's representations that the pipeline *does not* cross a single lek—an area where sage grouse travel— and *does not* cross any of the types of protected habitat areas that require special attention. Alliance previously explained, however, that there are some leks *close* to the pipeline area. Dkt. 14-1, at 15. It also explained there is a buffer zone around the pipeline corridor. *Id.* at 15; Dkt. 39, at 3. Thus, it is *possible* that some of the areas of overlap would cause a lek to fall within an analysis zone. But even then, Alliance only contends the pipeline corridor "may" impact sage grouse leks. *Id*. But speculative arguments cannot carry the day to achieve injunctive relief.

Act unlikely to support any allegations that the Forest Service violated the NFMA or the NEPA. *Id*. at 14. In like manner, the Court found Alliance likely could not succeed on its APA claims that the Forest Service's decision to approve the Project was arbitrary and capricious because the Forest Service considered a range of alternatives, analyzed any potential harms, and otherwise complied with all applicable statutes. *Id*.

Here too, at this stage, Alliance has not shown a likelihood of success on appeal because it has, for the most part, simply re-iterated its prior arguments (which the Court already found unavailing).[5]

Turning next to irreparable harm. The Court understands Alliance's fundamental argument that once a physical harm is done, it is difficult to undue. But as the Court outlined, it is not clear at this stage any harm will occur, let alone that it will be irreparable. Dkt. 29, at 14–16. The Forest Service maintains it might not have to cut down even a single tree. More importantly, however, even if there is some harm, that does not automatically mean the Forest Service's approval of the Project was erroneous; it considered the harm, whether there were alternatives, and what remedial measures may be necessary. As stated more than once in its decision, it is not the Court's duty to find a particular outcome but rather to find the Forest Service complied with the APA. *See* Dkt. 29, at 7, 11 n.10, 14. On the current record, Alliance has not been able to persuade the Court the Forest Service erred.

---

[5] Alliance appears to recognize the Court will likely deny its current motion. Dkt. 34-1, at 6. The Forest Service views this as a tactful admission of how meritless Alliance's request really is. The Court is of the opinion that Alliance simply recognizes that, considering the Court's prior decision, it will deny the instant motion, but that Alliance is nevertheless required to ask the Court for relief before seeking the same relief from the Circuit—which is an accurate understanding of the procedure required in these situations.

Because this is an administrative review case, the Court was put in a bit of a unique situation having to summarily decide—without the administrative record—whether Alliance would prevail on its claims that the Forest Service violated the APA. However, based upon the evidence, testimony, and argument currently in the record, the Court found it unlikely Alliance could show the Forest Service had acted in an arbitrary and capricious manner. For those reasons, a preliminary injunction was not warranted.

The same analysis and reasoning remain at this stage. "Under the 'sliding scale' approach to preliminary injunctions observed in this circuit, 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'" *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Here, the Court maintains Alliance has not met its burden. A weak showing of likelihood of success on the merits coupled with an even weaker showing of irreparable harm is insufficient to warrant an injunction pending appeal. For these reasons, the Court **DENIES** the Motion.

## V. ORDER

1. Alliance's Motion for Injunction Pending Appeal (Dkt. 34) is **DENIED**.

DATED: July 28, 2025

David C. Nye
Chief U.S. District Court Judge